INTEGRITY FLOORCOVERING, INC., Plaintiff,

v.

BROAN–NU TONE LLC, Defendant.

Broan–Nu Tone LLC, Third–Party Plaintiff,

v.

Merit Fire Protection, Inc., Third–Party Defendant.

No. 06–CV–0496 (PJS/RLE).

United States District Court, D. Minnesota.

Feb. 26, 2007.

Joseph F. Lulic, Hanson Lulic & Krall, LLC, for Plaintiff.

Aaron M. Ponce, Samuel S. Rufer, and William A. LeMire, Foley & Mansfield, PLLP, for Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

SCHILTZ, District Judge.

On February 2, 2004, a bathroom ventilation fan manufactured by defendant Broan–Nu Tone LLC ("Broan") allegedly malfunctioned and caused a fire that damaged a building owned by plaintiff Integrity Floorcovering, Inc. ("Integrity"). Integrity brought this product-liability action against Broan. Broan has moved for summary judgment on the grounds that Integrity's claims are barred by Minn.Stat. § 541.051, subd. 1(a) ("subdivision 1(a)"), which generally provides a ten-year statute of repose for lawsuits "arising out of the defective and unsafe condition of an improvement to real property[.]"[1] Integrity resists the motion, arguing primarily that its claims fall within an exception to the statute of repose for lawsuits against "the manufacturer or supplier of any equipment or machinery installed upon real property." Minn.Stat. § 541.051, subd. 1(d) ("subdivision 1(d)").

Basically, then, whether this lawsuit is time-barred depends on whether a bathroom ventilation fan is a piece of "equipment or machinery" for purposes of subdivision 1(d). The statute does not define "equipment or machinery"; the legislative history is essentially silent about the meaning of the term; the Minnesota courts have said very little about what the term means; and some of what has been said is contradictory and confusing. Obviously, this Court does not have a lot to work with. Ultimately, however, the Court concludes that a bathroom ventilation fan is not a piece of "equipment or machinery" for purposes of the statute.

Therefore, the ten-year statute of repose applies, and this action must be dismissed.

## I. BACKGROUND

The record contains almost no information about the ventilation fan that allegedly caused the fire. We know that Broan made it and that it was installed during the construction of the building in 1979. We also know that, at the time of construction, the relevant building codes required ventilation either naturally (as through a window) or by way of a mechanically-operated ventilation system. Dubbin Aff. ¶ 7 & Ex. B § 1105.

The fan was hard-wired into the building's electrical system and connected to the ventilation stack. Broan had no involvement in choosing the installers or otherwise supervising installation. The parties presume that the installers simply purchased the Broan fan from a building-supply company. The parties further presume that the fan was manufactured and tested at a factory and did not require much, if any, assembly. We do not know whether the installers did or did not follow any instructions that Broan might have provided with the fan.

## II. ANALYSIS

A party is entitled to prevail on a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, a court must assume that the nonmoving party's evidence is true and draw all justifiable inferences

---

1. Subdivision 1(a) provides both a two-year statute of limitation and a ten-year statute of repose. Because only the ten-year repose provision is at issue in this case, the Court will refer to subdivision 1(a) as a statute of repose.

arising from the evidence in that party's favor. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir.2003).

■ This is a diversity case. Minnesota substantive law governs, and, in interpreting Minnesota substantive law, this Court is bound by the decisions of the Minnesota Supreme Court. *See Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir.2006). When the Minnesota Supreme Court has not spoken on an issue, this Court must follow the decisions of the Minnesota Court of Appeals, if they are the best evidence of Minnesota law. *Id.*

### A. Improvement to Real Property

■ Broan moves for summary judgment on the basis of Minnesota's statute of repose for improvements to real property, which provides, in relevant part:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal ... arising out of the defective and unsafe condition of an improvement to real property ... shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property ... more than two years after discovery of the injury ... nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

Minn.Stat. § 541.051, subd. 1(a). A defense based on a statute of repose is an affirmative one, and the party asserting it bears the burden of proof. *See State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 885 (Minn.2006).

■ The Minnesota Supreme Court defines an "improvement to real property" as " 'a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.' " *Id.* at 884 (quoting *Pac. Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977)). In addition, an improvement must be "integral to and incorporated into the building or structure on the property." *Ritter v. Abbey–Etna Mach. Co.*, 483 N.W.2d 91, 93 (Minn.Ct.App.1992).

The bathroom ventilation fan manufactured by Broan undoubtedly fits this description. The fan was a "permanent addition to or betterment of" Integrity's building. The fan's purchase and installation "involve[d] the expenditure of labor [and] money." Without the fan, the building would not have conformed to code, and no means would have existed for removing humidity from the bathroom, likely causing mildew, rust, peeling paint or wallpaper, and similar deterioration of the property. Thus, the fan "enhance[d]" the "capital value" of Integrity's building and "ma[d]e the property more useful or valuable." The fan was also "integral to and incorporated into" the building's ventilation system. Without question, then, the fan was an "improvement to real property" for purposes of subdivision 1(a).

There is no dispute that this lawsuit was filed more than ten years after installation of the Broan fan in the Integrity building. Nor is there any dispute that Integrity's claims "aris[e] out of the defective and unsafe condition" of the fan. Integrity's claims therefore appear to be barred by subdivision 1(a).

Integrity makes two arguments to the contrary. First, it argues that *manufacturers* of improvements to real property are not within the class of persons protected by the ten-year statute of repose. Sec-

ond, it argues that Broan's fan comes within an exception to the statute of repose for "equipment or machinery." The Court will address each argument in turn.

### B. Class of Persons Protected by the Statute

■■■ Integrity argues that the purpose of subdivision 1(a) is to protect the construction trade from perpetual liability arising from building projects, not to protect manufacturers from product-liability actions. Integrity asks why the manufacturer of a bathroom ventilation fan should be protected by the statute of repose, but not, say, the manufacturer of a portable table fan. Integrity asks a good question, but it is not this Court's function to answer that question. Rather, it is this Court's function to interpret and enforce the text of the statute. The purpose of the Legislature is relevant only insofar as that purpose finds expression—even ambiguous expression—in the text of a statute. If the Legislature intends one thing, but says another, then this Court will enforce what the Legislature said, and not what it intended.

The statute of repose protects "any person" who "furnish[es] ... materials" that are used in an "improvement to real property[.]" Minn Stat. § 541.051, subd. 1(a). This language is plainly broad enough to encompass Broan and other manufacturers of such materials. The Minnesota courts have repeatedly held that the statute of repose does indeed apply to claims against the manufacturers of materials used to improve real property. *See, e.g., Kline v. Doughboy Recreational Mfg. Co.,* 495 N.W.2d 435, 437, 439 (Minn.Ct.App.1993) (barring design-defect claims brought against the *manufacturer* of an above-ground swimming pool); *Patton v. Yarrington,* 472 N.W.2d 157, 160 (Minn.Ct. App.1991) (barring claims against the *manufacturer* of a smoke detector); *Citi-*

*zens Sec. Mut. Ins. Co. of Red Wing v. Gen. Elec. Corp.,* 394 N.W.2d 167, 170–71 (Minn.Ct.App.1986) (barring claims against the *manufacturer* of a fluorescent light fixture); *cf. Calder v. City of Crystal,* 318 N.W.2d 838, 843 (Minn.1982) ("[A] 'manufacturer of component parts' falls within the statute's coverage as a supplier of materials used in construction of the improvement.").

At oral argument, Integrity asserted that, even if manufacturers are generally protected by subdivision 1(a), Minnesota courts have not applied the statute to bar design-defect claims. This is simply not true, *see, e.g., Kline,* 495 N.W.2d at 437, 439, and it would be surprising if it were true. Nothing in the statute distinguishes design-defect claims against manufacturers from other claims against manufacturers. To the contrary, the statute broadly applies to "action[s] by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property[.]" Integrity's design-defect claim is indisputably an action in "tort ... to recover damages for an[ ] injury to property[.]"

The Court therefore rejects Integrity's argument that subdivision 1(a) does not apply to claims against manufacturers—or, at least, to design-defect claims against manufacturers. Those who manufacture "materials" that are used in "improvement[s] to real property" are within the class of persons protected by the statute of repose.

### C. Equipment or Machinery

■■■ The second of Integrity's two arguments presents a much closer question. The statute of repose contains an explicit exception for actions against "the manufacturer or supplier of any equipment or ma-

chinery installed upon real property." Minn.Stat. § 541.051, subd. 1(d). Integrity argues that the bathroom ventilation fan was a piece of "equipment or machinery" that had been "installed upon real property" and thus that Broan, the "manufacturer" of that fan, is not protected by the statute of repose. The burden is on Integrity to prove that this exception to the statute of repose applies.[2]

In 1988, the Minnesota legislature commissioned a report ·on various aspects of Minnesota's tort laws. *See* Minnesota Injury Compensation Study Commission, *Report to the Legislature* (1990). The report recommended, among many other things, that § 541.051 be amended to exclude from the statute of repose lawsuits against "the manufacturer or supplier of any equipment or machinery installed upon real property." *Id.* at 20–21. The report said nothing helpful about purpose of this proposed amendment, except that it was modeled after a similar Virginia statute, and it was intended to "exclude from the statute [of repose] certain products liability actions." *Id.* at 20. The Minnesota Legislature enacted the report's recommendation.

Needless to say, the critical question under both the Virginia and Minnesota statutes is what qualifies as "equipment or machinery." The closest that the courts of either state have come to defining the phrase is the following passage from an opinion of the Virginia Supreme Court, which was later explicitly adopted in an opinion of the Minnesota Court of Appeals:

> We conclude that the General Assembly intended to perpetuate a distinction between, on one hand, those who furnish ordinary building materials, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors, and, on the other hand, those who furnish machinery or equipment. Unlike ordinary building materials, machinery and equipment are subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions. Materialmen in the latter category have means of protecting themselves which are not available to the former.

*Cape Henry Towers, Inc. v. Nat'l Gypsum Co.,* 229 Va. 596, 331 S.E.2d 476, 480 (1985); *see also Red Wing Motel Investors v. Red Wing Fire Dep't,* 552 N.W.2d 295, 297 n. 2 (Minn.Ct.App.1996) (adopting the reasoning of *Cape Henry* ).

The limited utility of this "test" becomes apparent when it is applied to the bathroom ventilation fan that is the subject of this action. Is that fan akin to "ordinary building materials," which are "incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors"? Or is that fan akin to "machinery or equipment," which is "subject to close quality control at the factory and may be made subject to independent manufacturer's warranties"? The answer to both questions is "yes and no."

---

2. In a case involving another exception to the statute of repose—this one for "actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession," Minn.Stat. § 541.051, subd. 1(c)—the Minnesota Supreme Court adopted the rule that "any exception to the statutes of limitation should be used 'only in exceptional circumstances' and the burden of proving the exception lies with the parties who seek to claim the benefit of the exception." *State Farm,* 718 N.W.2d. at 886 (quoting *Motley v. United States,* 295 F.3d 820, 824 (8th Cir.2002)).

On the one hand, a ventilation fan is not an "ordinary building material" in the sense of a nail or piece of lumber or pane of glass. A ventilation fan is "subject to close quality control at the factory." It is produced, assembled, and tested by the manufacturer, and it is distributed to building-supply companies as a finished product requiring little or no assembly. It is also generally subject to "independent manufacturer's warranties."[3] If the manufacturer wishes, those warranties can be made "voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions." Thus manufacturers of ventilation fans "have means of protecting themselves which are not available to" manufacturers of nails or pieces of lumber.

On the other hand, a ventilation fan can fairly be described as an "ordinary building material." Ventilation fans are commonly used in the construction of houses, commercial buildings, and other structures. Unlike, say, a portable table fan, a ventilation fan has no real utility except as a component of a building's ventilation system. It is *part* of the building, not something used *in* or *near* the building. Someone who purchased a building—and the building alone—would naturally assume that the ventilation fans were included.

Moreover, the ventilation fan in this case was required by the applicable building code. It would be odd for a *building* code to require the use of material that was not *building* material. Finally, ventilation fans are "incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors." Here, for example, the Broan fan was incorporated into the ventilation system of Integrity's building and hard-wired into the electrical system by a carpenter or an electrician who was working without Broan's knowledge or control.[4] On balance, then, the *Cape Henry* factors[5] point toward the conclusion that the ventilation fan manufactured by Broan was not a piece of "equipment or machinery," but was instead a piece of "ordinary building material" covered by the ten-year statute of repose.

The few Minnesota judicial opinions that reflect any light on the meaning of "equipment or machinery" for purposes of subdivision 1(d) also point toward the conclusion that a bathroom ventilation fan is a piece of "ordinary building material" and therefore outside of the exclusion. Minnesota

3. There is no record evidence of a warranty covering the Broan fan in this case, but, for the purposes of this motion, the Court assumes that Integrity is correct in asserting that the fan came with a manufacturer's warranty. *See* Pl.'s Mem. Opp. Summ. J. 5.

4. The Court recognizes that connection to the building's electrical circuitry and ventilation system are not necessarily dispositive. *Cf. Wilson v. A.M. Int'l*, No. 3–92–711, 1993 WL 724814, at *4 (D.Minn. Apr. 26, 1993) (explaining that such connections are not determinative of whether something is an "improvement to real property"). Here, however, the fan was not simply connected to the ventilation system; it was a necessary component of the system.

5. Later Virginia Supreme Court cases have identified a number of other factors to consider in determining whether something is "ordinary building material" or "equipment or machinery," but the Minnesota Court of Appeals has disclaimed reliance on those cases. *See Twinco Romax Auto. Warehouse, Inc. v. Olson Gen. Contractors, Inc.*, 643 N.W.2d 338, 341 & n. 1 (Minn.Ct.App.2002) (stating that *Grice v. Hungerford Mechanical Co.*, 236 Va. 305, 374 S.E.2d 17 (1988), *Luebbers v. Fort Wayne Plastics, Inc.*, 255 Va. 368, 498 S.E.2d 911 (1998), and *Cooper Industries, Inc. v. Melendez*, 260 Va. 578, 537 S.E.2d 580 (2000) are inconsistent with each other and therefore of "limited persuasive value").

courts have held or implied that carpeting, roof joists, fire sprinkler systems, and utility-pole anchors are not pieces of "equipment or machinery." *See Lietz v. NSP Co.*, No. A04–901, 2005 WL 44905, at *4 (Minn.Ct.App. Jan. 11, 2005) (utility-pole anchor), *aff'd*, 718 N.W.2d 865 (Minn.2006); *Twinco Romax Auto. Warehouse, Inc. v. Olson Gen. Contractors, Inc.*, 643 N.W.2d 338, 342 (Minn.Ct.App.2002) (roof joist); *Murphy v. Hank's Specialties, Inc.*, No. C0–98–65, 1998 WL 422256, at *3 (Minn. Ct.App. July 28, 1998) (carpeting); *Red Wing*, 552 N.W.2d at 297 (fire sprinkler system). All of these, like ventilation fans, are considered to be part of a structure, have little utility except as a component of a structure, and would be included in any sale of a structure.

At the same time, Minnesota courts have held or implied that printing presses, seed mixers, sugar-plant boilers, and steel-tube production machines are pieces of "equipment or machinery." *See Fluck v. Jacobson Mach. Works, Inc.*, No. CX–98–1899, 1999 WL 153789, at *2 (Minn.Ct.App. March 23, 1999) (seed mixer); *Larson v. Babcock & Wilcox*, 525 N.W.2d 589, 591–92 (Minn.Ct.App.1994) (sugar-plant boiler);

*Wilson v. A.M. Int'l*, No. 3–92–711, 1993 WL 724814, at *4 & n. 7 (D.Minn. Apr. 26, 1993) (printing press); *Ritter*, 483 N.W.2d at 93–94 & n. 2 (steel tube production mill). These large pieces of stand-alone industrial equipment, unlike ventilation fans, are generally not considered to be part of a structure, but rather to operate inside of a structure. These machines could be moved in and out of a structure without affecting the structure or the machine. Indeed, in theory, these machines could operate in an open field (as long as they had a source of power). Finally, these machines would not necessarily be included in the sale of a structure. Someone who purchased a building containing a printing press would be far more likely to ask whether the printing press was included in the sales price than to ask whether the sales price included the bathroom ventilation fans.

In short, the *Cape Henry* factors and the pattern that emerges from the few relevant Minnesota cases point to the same conclusion: The bathroom ventilation fan manufactured by Broan was not a piece of "equipment or machinery" for purposes of subdivision 1(d).[6] Integrity, however, re-

---

**6.** As noted, the Minnesota Legislature patterned the "equipment or machinery" exception after a similar Virginia statute. The Virginia legislature adopted this exception in response to *Wiggins v. Proctor & Schwartz, Inc.*, 330 F.Supp. 350 (E.D.Va.1971), *aff'd*, No. 71–1952 (4th Cir. March 8, 1972) (unpublished), in which a federal district court found that a 4500–pound jute picker bolted to a factory floor was an "improvement to real property" subject to Virginia's five-year statute of repose. Although it acknowledged that the machine could be removed without "physical or lasting injury" to the building, *id.* at 354, the court nevertheless held that "[m]achinery placed upon the realty as a permanent accession in order to carry on the business for which the realty is used becomes a fixture and part of the realty on being installed." *Id.* at 352. The Fourth Circuit affirmed without issuing a separate

opinion. In the words of the Virginia Supreme Court, "[c]onsiderable controversy ensued" in the Virginia legislature, culminating in the enactment of the "equipment or machinery" exception to the statute. *Cape Henry*, 331 S.E.2d at 479.

The history of the Virginia statute, on which Minnesota's is modeled, supports the Court's conclusion that the ventilation fan in this case is not the sort of product to which the "equipment or machinery" exception applies. The jute picker was a machine that, although physically attached to the real property, served a purpose unrelated to the building in which it was housed. In other words, putting aside the need to shelter the jute picker from the weather, and assuming some available power source, the jute picker could serve its function just as well outside of the building. In contrast, a ventilation fan is an integral

sists this conclusion, citing language from two Minnesota opinions that, Integrity says, point in the opposite direction.

Integrity first cites *Red Wing Motel Investors v. Red Wing Fire Department*, 552 N.W.2d 295 (Minn.Ct.App.1996). The defendant in *Red Wing* was General Sprinkler, which had designed and installed a fire sprinkler system in a motel. *Id.* at 297. Because the pipes were pitched incorrectly, water did not drain properly and the pipes froze, causing extensive damage. *Id.* The question was whether the sprinkler system was "equipment or machinery" within the meaning of subdivision 1(d).

The Minnesota Court of Appeals held that General Sprinkler "plainly provided Motel with ordinary building materials (pipes and sprinkler heads), not machinery or equipment." *Id.* That holding makes sense and is consistent with all that is said above. That holding would also seem to be quite harmful to Integrity's position. But Integrity looks past the holding of *Red Wing* and points to the following parenthetical, which was added immediately after the holding: "(Had the sprinkler heads themselves failed, their manufacturer might, however, fall within the subdivision 1(d) exception.)" *Id.* at 297–98. Integrity seizes on this parenthetical and argues that ventilation fans are like sprinkler heads and therefore within the exception to the statute of repose.

For three reasons, the Court concludes that this parenthetical is entitled to little weight. First, it is dicta; the "sprinkler heads themselves" did not fail, and thus the court was giving an advisory opinion on a hypothetical situation. Second, it is dicta that conflicts with either a holding or other dicta (depending on how one looks at it)—the court's statement that the defendant "plainly provided Motel with ordinary building materials (pipes *and sprinkler heads)*" (emphasis added). Third, it is unpersuasive dicta. Nothing in the language or logic of the statute suggests that a sprinkler head is not a piece of "equipment or machinery" when a leak comes from a pipe to which it is connected but is a piece of "equipment or machinery" when a leak comes from the sprinkler head itself. It is very difficult to know what the Court of Appeals had in mind when it added this parenthetical.[7]

Integrity next cites *Twinco Romax Automotive Warehouse, Inc. v. Olson General Contractors, Inc.*, 643 N.W.2d 338 (Minn. Ct.App.2002), in which the Minnesota Court of Appeals said that "at a minimum, ordinary building materials are those items that are essential to the existence of the building ... includ[ing] foundations, floors, windows, doors, roofs, and materials necessary to supporting roofs, such as joists." *Id.* at 342. Reading this list of examples as a limitation, Integrity argues that ventilation fans are not essential to

part of a building and serves no purpose unrelated to its function as part of the structure.

**7.** The limitation periods in subdivision 1(a) and the "equipment or machinery" exception in subdivision 1(d) apply to both manufacturers and suppliers. Thus, it is impossible to distinguish either *Red Wing's* holding or its dicta on the grounds that the defendant in *Red Wing* was a supplier, while the defendant here is a manufacturer. If sprinkler heads are ordinary building materials, then both the manufacturer and supplier would be protect-

ed by the statute of repose. If they are not, then both the manufacturer and supplier would fall within the exception in subdivision 1(d).

In any event, nothing in the *Red Wing* opinion suggests that the court was focused on the distinction between a manufacturer and a supplier. Instead, the court relied solely on the distinction between ordinary building materials, on the one hand, and "equipment or machinery," on the other. *Red Wing*, 552 N.W.2d at 297.

the existence of a building and therefore are not "ordinary building materials."

There are two problems with Integrity's argument. First, *Twinco* merely says that items that *are* essential to the existence of a building will *always* be considered "ordinary building materials." It does not say that items that are *not* essential to the existence of a building will *never* be considered "ordinary building materials." Second, and more importantly, a ventilation system is as essential to the existence of a building as are windows or doors, and the fan is a part of that ventilation system. Also, as previously noted, the building code required that the bathroom in Integrity's building be ventilated with either a window or a mechanically-operated ventilation system. It is not apparent why a window would be "essential," but a ventilation fan would not.

Finally, Integrity argues that subdivision 1(d) was meant to exclude all product-liability claims from the statute of repose, and thus its product-liability claim against Broan must be excluded. *See* Minnesota Injury Compensation Study Commission, *supra* at 20 ("[T]here are good and independent reasons justifying the statute of repose, but those reasons do not extend to products liability cases in general."); *cf. K.R. v. Sanford,* 605 N.W.2d 387, 390 (Minn.2000) (construing another statute "with particular focus on the origins of the amendment in recommendations to the legislature from the Minnesota Injury Compensation Study Commission"). But the report cited by Integrity merely recommended "that section 541.051 be amended to exclude from the statute *certain* products liability actions." *See* Minnesota Injury Compensation Study Commission, *supra* at 20 (emphasis added). For the

reasons described above, the Court concludes that Integrity's product-liability action is not one of the product-liability actions that were excluded from the statute of repose.

In sum, the Court finds that Integrity's claims are barred by subdivision 1(a) because they were filed "more than ten years after substantial completion of the construction" of its building. Broan's motion for summary judgment is granted, and Integrity's claims are dismissed with prejudice. In light of the dismissal of Integrity's claims against Broan, the Court will also dismiss without prejudice Broan's amended third-party complaint seeking contribution or indemnity against Merit Fire Protection, Inc.[8]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 27] is GRANTED.

2. Plaintiff's complaint [Docket No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS. And

3. Defendant's third-party complaint [Docket No. 26] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**8.** Broan had previously filed a third-party complaint against Technology Fire Protection, Inc., but later stipulated to dismissal without prejudice of that earlier complaint. *See* Docket No. 18.