# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1824

_____

Integrity Floorcovering, Inc.,  \*

Appellant,  \*

v.  \* Appeal from the United States
\* District Court for the
\* District of Minnesota.

Broan-Nutone, LLC,  \*

Appellee.  \*

_____

Submitted: December 14, 2007
Filed: April 7, 2008

_____

Before RILEY, COLLOTON, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

In this diversity action, Integrity Floorcovering, Inc. (Integrity) and Chicago Avenue Partners, Ltd. (CAP) (collectively, plaintiffs), filed separate suits against Broan-Nutone, LLC (Broan), the manufacturer of a bathroom ventilation fan which allegedly malfunctioned and separately damaged an apartment building owned by CAP and a commercial warehouse building owned by Integrity.[1]  Broan moved for

_____

[1]Because the separate cases arise out of virtually identical circumstances, and rely on the same legal analysis regarding the applicability of Minnesota Statute § 541.051, this opinion will be incorporated by reference in the Chicago Avenue Partners, Ltd. v. Broan Nutone, LLC, No. 07-1784 opinion.  For this reason, we refer

summary judgment, arguing the claims were barred by Minnesota Statute § 541.051, subd. 1(a), which provides a ten-year statute of repose for lawsuits "arising out of the defective and unsafe condition of an improvement to real property." The district court[2] applied the Minnesota statute of repose and granted summary judgment in favor of Broan. The plaintiffs appeal. Doing our best to anticipate what the Minnesota Supreme Court would do with this challenging diversity question, we affirm.

## I.     BACKGROUND[3]

The plaintiffs allege bathroom ventilation fans, manufactured by Broan, malfunctioned and damaged a Minnesota apartment building owned by CAP and a commercial warehouse building owned by Integrity. The fans were sold in Minnesota. The Integrity fire occurred on February 2, 2004. The fan was originally installed in the Integrity building in 1979, in a bathroom without a window or other natural ventilation. The CAP fire occurred on May 6, 2002. The fan in the CAP building was installed sometime between 1978 and 1981, in an apartment bathroom also without a window or natural ventilation.

Integrity does not dispute the fan was hard-wired into the building's electrical system. In its separate suit, CAP contended the fan was not hard-wired, but utilized a plug. Whether considered fully hard-wired or not, the Broan fan required installation significantly beyond simply plugging the unit into an outlet. The fan

---

to both Integrity and CAP in discussing the issues.

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[3]The parties provide few record citations, and many facts discussed by the parties are not in the record on appeal. On the other hand, the parties do not disagree on most of the material facts and primarily debate differing legal conclusions. Where factual disagreement exists, the record usually includes the relevant factual evidence. We also rely on the thorough, well-reasoned opinion by the district court.

needed ventilation directly to the outside air, not into walls or ceiling space. The fan was to be installed into a hole in the ceiling, fastened by nails into a stud or joist. Assembly required the services of someone ". . . familiar with methods of installing electrical wiring . . . [or] a qualified electrician." The fan also had to be connected to the building's power supply, bringing the power cable to the fan, and utilizing a ground wire and grounding clip. Once installed, if the motor were to fail or otherwise need replacing, the motor could apparently be replaced fairly simply, given that the "[c]omplete, compact motor assembly install[ed] with one screw . . . [and] plug[ged] into [the] housing receptacle."

Broan moved for summary judgment, arguing the claims were barred by Minn. Stat. § 541.051, subd. 1(a), which provides a ten-year statute of repose for an "action by any person . . . to recover damages for any injury to property, real or personal . . . arising out of the defective and unsafe condition of an improvement to real property . . . brought against any person . . . furnishing . . . materials . . . ." The plaintiffs argued Broan was not a member of the class of persons covered by the statute of repose. Alternately, the plaintiffs contended their claims fell under an exception to the statute of repose for lawsuits filed against "the manufacturer or supplier of any equipment or machinery installed upon real property." The district court found the statute applied to Broan, and the bathroom ventilation fan did not qualify as "equipment or machinery" under Minnesota law. The district court thus granted summary judgment in favor of Broan.

## II.    DISCUSSION

We review the grant of summary judgment de novo, viewing the record most favorably to the non-moving party. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003). Summary judgment is proper if, after viewing all the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007).

As a diversity case, we must apply Minnesota law. See White Consol. Indus., Inc. v. McGill Mfg. Co., Inc., 165 F.3d 1185, 1187 (8th Cir. 1999). We review the district court's interpretation of Minnesota law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). In resolving any substantive issues of state law, we are bound by the decisions of the Minnesota Supreme Court. See Kovarik v. American Family Ins. Group, 108 F.3d 962, 964 (8th Cir. 1997). If the Minnesota Supreme Court has not spoken on a particular issue, we must attempt to predict how the Minnesota Supreme Court would decide an issue and "may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." Id. (citation omitted).

### A.    Application of Minn. Stat. § 541.051

The plaintiffs first argue the statute of repose does not apply in this case because Minn. Stat. § 541.051 does not limit claims for damages caused by defective products, and because "it was not the intent of the legislature to protect product manufacturers such as Broan."[4] This argument fails.

The district court correctly found the plain language of the statute covers the bathroom ventilation fan and Broan as its manufacturer. The statute creates a ten year period of repose relating to "damages for any injury to property, real or personal . . . *arising out of the defective and unsafe condition* of an improvement to real property" and covers "*any person . . . furnishing . . . materials*." Minn. Stat. § 541.051, subd. 1(a) (emphasis added). The Minnesota Supreme Court defines an "improvement to

---

[4]Although CAP contested this issue in its brief, during oral argument, CAP conceded Broan is a member of the general class protected by Minn. Stat. § 541.051. Integrity declined to concede this issue. For clarity and completeness, we address the issue.

real property" as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." State Farm Fire & Cas. v. Aquila Inc., 718 N.W.2d 879, 884 (Minn. 2006) (citation omitted). Noting that the fan, located in an interior room, was required by Minnesota building codes, and provided for the removal of humidity, preventing or minimizing mildew, rust, peeling paint, and other property deterioration, the district court logically, and correctly, found the fan was a permanent addition designed to make the property more useful and valuable and, thus, an improvement to real property.

The plaintiffs also contend the Minnesota legislature never intended the statute of repose to apply to product liability claims involving *widespread* damage. This contention is flawed. As discussed more fully in the following section, Minnesota courts have determined product manufacturers *are* protected under the repose statute when they manufacture "ordinary building materials" and are exempted from protection when the products are classified as "equipment or machinery." See Red Wing Motel Investors v. Red Wing Fire Dep't, 552 N.W.2d 295, 297 & n.2 (Minn. Ct. App. 1996) (adopting language from Cape Henry Towers, Inc. v. Nat'l Gypsum Co., 331 S.E.2d 476, 480 (Va. 1985), recognizing the Minnesota statute of repose was modeled after Virginia's, and "accord[ing] weight to [Virginia's] interpretation of the borrowed provision." (citation omitted)). Thus, as interpreted by the Minnesota courts, the statute plainly covers at least some product liability claims. As Broan aptly notes, "Cape Henry's distinction between 'ordinary building materials' and 'equipment or machinery' possesses meaning only if its purpose is to distinguish between different types of products installed on real property."

Integrity admits at least some product liability claims are covered, but contends, "[i]n a typical claim for construction defect, a plaintiff may be entitled to the cost of repair or replacement of a defective component used in his home[,]" but such a claim "is quintessentially different in character from a claim arising from a product

malfunctioning and actually causing widespread property damage[.]" Integrity thus claims, "It was never the intention of the legislature to protect a manufacturer such as Broan from liability arising from its fan failing and causing a fire." This claim also is unavailing. The plain language of the statute bars "*damages* for *any* injury to property, real or personal . . . arising out of the defective and unsafe condition of an improvement to real property" and covers "*any person . . . furnishing . . . materials.*" Minn. Stat. § 541.051, subd. 1(a) (emphasis added). The statute in no way distinguishes between the type, scope, or degree of damages at issue, nor the kinds of materials furnished. Thus, the plain language of the statute controls, and we need not consider the parties' varying interpretations of legislative history. See Hutchinson Technology, Inc. v. Comm'r of Revenue, 698 N.W.2d 1, 8 (Minn. 2005) (finding "no cause to look beyond the plain language of the statutes to legislative history that might create, rather than eliminate, ambiguity.").

Finally, Integrity asserts, if the statute is read according to its plain terms, "an artificial distinction would exist wherein one plaintiff may be able to bring a claim against the manufacturer of a defective product, but a different plaintiff could not bring the exact same claim against the same manufacturer for the same product because the product was installed upon real property." This assertion fails to recognize both the role of the courts, and the rationale of the legislature. Even if such a distinction were inequitable, absent an argument the statute is in some way unconstitutional or otherwise illegal, it is not the courts' role to make such policy determinations. Additionally, the distinction is not "artificial" or otherwise irrational. If a product is incorporated into a building, proving causation and the source of any damages becomes more difficult. The circumstances of this case aptly demonstrate this point. Establishing whether the fire was caused by the fan, the electrical connection to or near the fan, or some other source entirely, could be difficult. Such difficulties compound with the passage of time. Providing a statute of repose for products incorporated into a building structure, and not providing repose for stand-alone products, does not represent "an artificial distinction."

The statute's plain language includes the bathroom ventilation fan, and covers Broan as its manufacturer. The district court's finding on this issue is affirmed.

### B. Equipment or Machinery

The plaintiffs contend the Broan fan is properly classified under the statute of repose's exception for actions against "the manufacturer or supplier of any equipment or machinery installed upon real property." See Minn. Stat. § 541.051, subd. 1(d). The plaintiffs bear the burden of showing the exception applies, and "any exception to the statutes of limitation should be used *only in exceptional circumstances*[.]" State Farm, 718 N.W.2d. at 886 (internal quotation marks and citation omitted) (emphasis added).

The district court correctly noted both Minnesota legislative history and Minnesota courts have provided little guidance or clarity as to the meaning of "equipment or machinery" and what such a term of art might encompass. The Minnesota Court of Appeals adopted the following reasoning from the Virginia Supreme Court:

> We conclude that the General Assembly intended to perpetuate a distinction between, on one hand, those who furnish *ordinary building materials*, which are incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors, and, on the other hand, those who furnish *machinery or equipment*. Unlike ordinary building materials, machinery and equipment are subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions. Materialmen in the latter category have means of protecting themselves which are not available to the former.

<u>Cape Henry</u>, 331 S.E.2d at 480 (adopted by <u>Red Wing Motel Investors</u>, 552 N.W.2d at 297 & n.2) (emphasis added)).

As the district court noted, classifying the bathroom fan represents a difficult task under this explanation.[5] On one hand, the fan clearly is not an "ordinary building material" such as a nail, a screw, or a window. Additionally, the fan is "subject to close quality control at the factory" and may be covered by "independent manufacturer's warranties." These factors indicate the fan qualifies as "equipment or machinery." On the other hand, as the district court discussed, ventilation fans are commonly incorporated into the structure of buildings, particularly interior bathrooms, and are necessary to avoid the build-up of mildew or rust. Further, the fan in this case was required under Minnesota building codes. More significantly, such fans are "incorporated into construction work outside the control of their manufacturers or suppliers, at the direction of architects, designers, and contractors." These factors indicate the fan is ordinary building material. <u>See</u> <u>Red Wing Motel Investors</u>, 552 N.W.2d at 297 (quoting <u>Cape Henry</u>, 331 S.E.2d at 480).

We must attempt to forecast how the Minnesota Supreme Court would decide this issue. <u>See</u> <u>Kovarik</u>, 108 F.3d at 964. The district court did so by drawing inferences from Minnesota cases dealing with analogous items. The available precedent is limited, but provides some guidance. First, items integrally incorporated

---

[5]The plaintiffs contend the district court erred by considering factors not listed in the <u>Cape Henry</u> "test." On the contrary, <u>Cape Henry</u> does not specify a complete list of criteria courts exclusively must employ in order to determine whether an item qualifies as "ordinary building material" or "equipment or machinery." Rather, the Virginia court simply discusses and explains some differences between the terms. <u>See</u> <u>Cape Henry</u>, 331 S.E.2d at 480. The district court did not utilize impermissible factors, but employed logic and reason, drawing inferences from Minnesota cases employing <u>Cape Henry</u>, discussing the "pattern that emerges from the few relevant Minnesota cases on point[.]"

as part of a building structure, such as a fire sprinkler system, are considered "ordinary building materials." See Red Wing Motel Investors, 552 N.W.2d at 297 (fire sprinkler system); Lietz v. NSP Co., 2005 WL 44905, at *2, *4 (Minn. Ct. App. Jan. 11, 2005) (unpublished) (utility pole anchor), aff'd, 718 N.W.2d 865, 869-73 (Minn. 2006); Twinco Romax Auto. Warehouse, Inc. v. Olson Gen. Contractors, Inc., 643 N.W.2d 338, 342 (Minn. Ct. App. 2002) (roof joist); Murphy v. Hank's Specialties, Inc., 1998 WL 422256, at *3 (Minn. Ct. App. July 28, 1998) (unpublished) (carpeting). Second, items considered "equipment or machinery" are typically large scale items, which are not integral to or incorporated into the building, and could exist separately from the building structure. See Fluck v. Jacobson Mach. Works, Inc., 1999 WL 153789, at *2 (Minn. Ct. App. March 23, 1999) (unpublished) (seed mixer); Wilson v. A.M. Int'l, 1993 WL 724814, at *4-5 & n.7 (D. Minn. Apr. 26, 1993) (concluding a printing press "was not an improvement to real property," noting the "equipment or machinery" exception was not in effect at the time of the plaintiff's injury); Ritter v. Abbey-Etna Mach. Co., 483 N.W.2d 91, 93-4 & n.2 (Minn. Ct. App. 1992) (same for steel tube production mill). The district court properly found Minnesota courts would most likely consider the Broan bathroom fan "ordinary building material."[6]

---

[6]The plaintiffs cite Rolnick v. Gibson & Sons, Inc., 617 A.2d 288, 290 (N.J. Super. Ct. App. Div. 1992) in which the Superior Court of New Jersey found an attic ventilation fan was not an "improvement to real property." This case is unpersuasive for two reasons. First, the statute at issue provided repose only for claims arising out of "the design, planning, supervision or construction of an improvement to real property." Id. at 290 (quoting N.J. Stat. Ann. § 2A:14-1.1). The Minnesota statute is much broader, specifically protecting "*any person . . . furnishing . . . materials* [for] the improvement to real property[.]" Minn. Stat. § 541.051, subd. 1(a) (emphasis added). Second, based on reasonable inferences from the Minnesota cases, combined with the greater breadth of the Minnesota statute and factual differences between the cases, we conclude Rolnick would not persuade the Minnesota Supreme Court toward a different result.

The plaintiffs also rely on dicta from Red Wing Motel Investors, in which the court determined a motel sprinkler system was "ordinary building material," but then parenthetically mused, "Had the sprinkler heads themselves failed, their manufacturer

The plaintiffs accurately argue that courts should not look solely to whether an item is a stand-alone piece of equipment, as opposed to whether the item is attached or incorporated into the building structure. Stand-alone items will rarely fit under the initial statute of repose to begin with, because they are typically not "an improvement to real property." See Minn. Stat. § 541.051, subd. 1(a). There would be no point in the Minnesota Legislature carving out an *exception* for such items. However, we do not hold that an item *must* be capable of standing alone in order to qualify as "equipment or machinery." According to the Minnesota courts, this stand alone capability is only a factor for consideration.

Integrity "asks the Court to provide a clear standard for defining what items should be considered ordinary building materials and what items should be considered equipment or machinery under the statute." This inquiry fails to recognize it is not the place of this court to attempt to define Minnesota's law, or refine the Minnesota courts' methodology for analyzing the Minnesota statute. Rather, we must apply Minnesota's law as we predict the Minnesota courts would. See Kovarik, 108 F.3d at 964.

---

might, however, fall within the subdivision [equipment or machinery] exception." See Red Wing Motel Investors, 552 N.W.2d at 297-98. This language does not help the plaintiffs for three reasons. First, the court earlier in its opinion found sprinkler heads "plainly" were ordinary building materials and not machinery or equipment. Id. at 297. Second, the contrary statement is dicta, and does not overcome the logical inferences from Minnesota case law as a whole, indicating a required interior bathroom ventilation fan is "ordinary building material." Third, even if we relied upon the statement, the outcome of this case would not change. The Red Wing Motel Investors court appeared to be explaining that an item or system integrally incorporated into the building structure is an "ordinary building material," but the sprinkler head itself, if easily removable and replaced, *might* fall over the line into "equipment or machinery." See id. at 297-98. The ventilation fan at issue here, while arguably not as integrally incorporated into the building structure as a full sprinkler system, is still more integrated than a sprinkler head that could screw on or off. Ultimately, we do not find the dicta persuasive.

-10-

The facts of this case present a close issue. In light of the statute's plain language and Minnesota's case law, the code-required interior bathroom ventilation fan is more analogous to the items Minnesota courts have found to be ordinary building materials. The plaintiffs bear the burden of showing the exception applies, and "any exception to the statutes of limitation should be used *only in exceptional circumstances*[.]" State Farm, 718 N.W.2d. at 886 (internal quotation marks and citation omitted) (emphasis added). Thus, we conclude the plaintiffs fail to meet their burden to demonstrate the subject fan is "equipment or machinery" exempt from the statute of repose.

## III.    CONCLUSION

The plain language of the statute includes Broan as a member of the class covered by the Minnesota statute of repose. The district court's well-reasoned opinion properly interpreted Minnesota law and found the plaintiffs did not establish the Broan interior bathroom ventilation fan is "equipment or machinery" excepted from the Minnesota statute of repose. The statute of repose applies to the plaintiffs' claims, and the district court's grant of summary judgment is affirmed.

_____