# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-1266

_____

Great West Casualty Company

*Plaintiff - Appellee*

v.

Ruben Decker

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 11, 2020
Filed: April 29, 2020

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Ruben Decker, a truck driver, filed claims against his employer's insurer to recover for an injury he suffered when loading a truck. The district court[1] granted summary judgment in favor of the insurer. We affirm.

## I. Background

Ruben Decker drove his semi-truck to Michael Selle's farm in Fortuna, North Dakota, to pick up a load of hay for delivery. Selle used his tractor to load the 1,800-pound hay bales onto the truck. As Selle loaded, Decker remained on the ground, periodically strapping hay bales to the truck. Two hay bales suddenly fell and landed on Decker. Decker, seriously injured, was airlifted to a hospital in Minot, North Dakota, where he was treated.

Neither Selle's tractor nor his farm were insured at the time. Decker therefore contacted his employer's insurer, Great West Casualty Company ("Great West"). He knew the truck's policy provided no-fault benefits, which he hoped might help cover his medical expenses. Great West refused to pay. It explained the truck's policy only covered injuries resulting from loading and unloading accidents if the injured person was "occupying" the truck. Because Decker was not occupying the truck when he was injured, Great West concluded, he was not entitled to the no-fault benefits.

Decker sued Selle in North Dakota state court. Selle then asked Great West to defend and indemnify him from the suit. Great West refused, noting that Selle was not covered by the policy. While the policy contained a provision promising liability coverage for the truck's permissive users, this provision did not apply to Selle. Rather, Great West explained, the policy contained a "moving property exclusion." That is, the policy does not cover the liability of permissive users who move property

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

to and from the truck. And Selle was doing just that when Decker was injured. So despite the fact that he was using the truck with Decker's permission, Great West would not defend and indemnify Selle.

Selle and Decker entered a so-called "*Miller-Shugart*" settlement agreement. *See Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). In the agreement, Selle accepted liability for Decker's injuries, and then assigned whatever rights and claims he had against Great West to Decker. Thus, if Decker could establish in court that Great West was, in fact, required to defend and indemnify Selle, Decker would be entitled to the payout.

After learning about Selle and Decker's agreement, Great West sought a declaratory judgment from the United States District Court for the District of Minnesota, attempting to secure a declaration that it owed Selle and Decker nothing under the policy. Decker responded by filing a counterclaim against Great West for the insurance money he thought he was owed. Among other things, Decker claimed Great West owed him no-fault benefits and defense-and-indemnity coverage. After nearly two years of litigation, Great West moved for summary judgment. The district court granted the motion.

The district court found the policy provided neither no-fault benefits nor defense-and-indemnification under the circumstances. First, the district court explained, the policy's no-fault benefits only cover loading and unloading accidents if the injured person was occupying the truck at the time. While Decker argued that limiting coverage in such situations violates Minnesota law, the district court pointed out that Minnesota Statute section 65B.43 expressly permits insurers to deny no-fault benefits for loading/unloading accidents unless the person injured was "occupying, entering into or alighting from [the vehicle]." Minn. Stat. § 65B.43, subd. 3. Because the policy mirrored the statute, the district court concluded, Great West's policy was

valid and enforceable. And because Decker was not, in fact, occupying, entering into, or alighting from the truck, Great West did not owe Decker no-fault benefits.

Second, the district court found that Great West did not need to defend and indemnify Selle. The district court recognized Great West's policy generally covered the liability of permissive users. And, because Selle was loading the truck with Decker's permission, he was a permissive user. But the district court noted the policy's "moving property exclusion," which excludes from coverage certain permissive users "while moving property to or from" the truck. Even though Selle had permission to use the truck, he was excluded from coverage because he was moving hay bales to the truck.

Decker argued this "moving property exclusion" is invalid under Minnesota law. But the district court again disagreed. Minnesota law, the district court explained, provides a precise definition of whom Great West must cover, and Selle fell outside that definition. Moreover, the court continued, Minnesota law permits insurers to limit the coverage they offer to third parties like Selle. In other words, the law does not require insurers to provide liability coverage for *all* permissive users in *all* circumstances. Great West's narrow "moving property exclusion," the district court held, is legally valid.

Decker now appeals, arguing the "moving property exclusion" is invalid under Minnesota law.

## II. Analysis

Decker argues on appeal that, contrary to the district court's conclusion, Great West's "moving property exclusion" is invalid under Minnesota law. "We review a district court's grant of summary judgment *de novo*, including its interpretation of state law." *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011).

The insurance contract at issue is governed by Minnesota law. When applying Minnesota law, we are "bound by the decisions of the Minnesota Supreme Court," and "[i]f the Minnesota Supreme Court has not spoken on a particular issue, we must attempt to predict how the Minnesota Supreme Court would decide [it] and 'may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data.'" *Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008) (ellipses in original) (quoting *Kovarik v. Am. Family Ins. Grp.*, 108 F.3d 962, 964 (8th Cir. 1997)).

Because we are interpreting Minnesota law, we apply the Minnesota Supreme Court's approach to statutory interpretation:

> The goal of statutory interpretation is to effectuate the intent of the Legislature. When the Legislature's intent is clear from the unambiguous language of a statute, we interpret the statute according to its plain meaning. But if a statute is susceptible to more than one reasonable interpretation, the statute is ambiguous and we may consider other factors to ascertain the Legislature's intent.

*State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 529 (Minn. 2015) (citations omitted).

Minnesota generally requires liability insurance for all operating vehicles. According to the Minnesota No-Fault Automobile Insurance Act ("No-Fault Act"),

> [e]very owner of a motor vehicle . . . shall maintain . . . a plan of reparation security . . . insuring against loss resulting from liability imposed by law for injury and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. The plan of reparation security shall provide for basic economic loss benefits and residual liability coverage in amounts [specified by statute elsewhere].

-5-

Minn. Stat. § 65B.48, subd. 1. This required liability coverage "follows the vehicle rather than the person." *Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 522 (Minn. 2001). That is, liability coverage "must cover the vehicle even if a permissive [user] is at fault." *Id.* The scope of the insurer's obligation is partially outlined in another provision of the No-Fault Act:

> Under residual liability insurance the reparation obligor shall be liable to pay, on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of any motor vehicle, including a motor vehicle permissively operated by an insured as that term is defined in section 65B.43, subdivision 5.

Minn. Stat. § 65B.49, subd. 3(2). According to Decker, the No-Fault Act requires Great West (the "reparation obligor") to pay, on behalf of Selle (a permissive user), the personal injury damages resulting from Selle's use and operation of the insured truck. Or, to put the argument another way, Minnesota law requires omnibus liability coverage — coverage that would extend to permissive users like Selle.

But we cannot follow Decker to his desired conclusion. Minnesota Statute section 65B.49 only explicitly requires insurers to cover costs for which the "insured" is liable. And Minnesota law defines an "insured" as either the "named insured" or certain people (generally family members) residing within the named insured's household. Minn. Stat. § 65B.43, subd. 5. Selle is not named in the insurance policy, nor is he part of Decker's household. He therefore falls outside the statutory definition of "insured."

Decker contends that, despite the statutory language, Minnesota law requires omnibus liability coverage, or at least coverage for permissive users like Selle. Decker points to the No-Fault Act's statutory predecessor, the Minnesota Safety

-6-

Responsibility Act, which *did* require omnibus liability coverage. Under the old law, a vehicle's insurance policy must "insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured." Minn. Stat. § 170.40, subd. 2(2) (1971) (repealed 1974).

Even though this statutory provision has since been repealed, Decker argues, Minnesota still requires the same omnibus liability coverage. As the Minnesota Supreme Court explained in *Widness*,

> The section in the Safety Responsibility Act requiring liability coverage for permissive drivers was repealed, but it is likely due to the fact that the same coverage was provided by the No-Fault Act's residual liability requirement. That is, residual liability must cover the vehicle even if a permissive driver is at fault.

635 N.W.2d at 521–22. According to the *Widness* court, the required residual liability insurance follows the vehicle "so that if the insured vehicle is the at-fault vehicle in an accident, there will be liability coverage." *Id.* at 521.

Decker similarly points to other Minnesota Supreme Court cases indicating omnibus coverage is still required under the No-Fault Act. In *Hertz Corp. v. State Farm Mutual Insurance Co.*, for example, it held that the No-Fault Act required a self-insured rental-car company to cover a permissive driver's liability, even when the driver had his own liability insurance. 573 N.W.2d 686, 690–91 (Minn. 1998). This, Decker maintains, shows the No-Fault Act requires liability coverage for permissive drivers, and that any insurance provision to the contrary is void under Minnesota law. Dicta in *Hertz* supports Decker's position. *See id.* at 689 (indicating that a policy conforming to the No-Fault Act "would contain an omnibus clause extending coverage to permissive drivers," and, as such, a permissive driver "would be fully covered by virtue of the omnibus clause"). Thus, Decker argues, Minnesota

law requires coverage for an insured vehicle's permissive users, including Selle. Otherwise, situations could arise in which no coverage exists. And that would directly conflict with the Minnesota Supreme Court's understanding of the No-Fault Act.

But even if we suppose Minnesota law requires some degree of liability coverage for permissive users not identified in the No-Fault Act's language, Decker's argument fails. First, the Minnesota Supreme Court has held that the No-Fault Act permits insurers to limit liability coverage for third parties, at least in certain circumstances: "While the No-Fault Act requires an automobile owner's policy to include third-party liability coverage, there is nothing in the No-Fault Act, either explicit or implicit, that prohibits insurance companies from including some restrictions on liability coverage in their contracts." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 251 (Minn. 1998). Following this reasoning, the Minnesota Court of Appeals has held that insurance companies *can*, in some situations, limit their third-party liability coverage, even to the point of denying coverage to named insureds and their families. *Ill. Farmers Ins. Co. v. Eull*, 594 N.W.2d 559, 560–62 (Minn. Ct. App. 1999) (enforcing a "business use exclusion," which excluded from coverage liabilities incurred when "deliver[ing] products or services" for business purposes). The Minnesota Supreme Court has not given us reason to think *Lobeck* and *Eull* are bad law. *See Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 923 n.2 (Minn. 2011) ("[B]ased on our differing treatment of exclusions to first-party and third-party coverage, we express no opinion about" whether *Eull* was rightly decided.); *Widness*, 635 N.W.2d at 521 (citing *Lobeck* approvingly for other legal propositions). Nothing, therefore, precludes Great West from limiting third-party liability coverage in limited circumstances, e.g., when someone's liability arises from "moving property to or from the [truck]."

Second, Minnesota law appears to permit the very exclusion Decker maintains is invalid. The insurance required by Minnesota law must cover liabilities "arising

out of the ownership, maintenance, operation or use of the vehicle." Minn. Stat. § 65B.48, subd. 1; *see also* Minn. Stat. § 65B.49, subd. 3(2) (describing liabilities "arising out of the ownership, maintenance or use of any motor vehicle"). Selle did not own the truck, and as Decker recognized at oral argument, "operation of a vehicle is a subset of the use of a vehicle." *See Waldbillig v. State Farm Mut. Auto. Ins. Co.*, 321 N.W.2d 49, 51 (Minn. 1982) (quoting the Uniform Motor Vehicle Accident Reparations Act) ("'[U]se' has a broader meaning than operating or driving a vehicle . . . .").

So Decker's argument depends on whether his injuries arose out of the maintenance or use of the truck. As the district court pointed out when discussing Decker's claim for no-fault benefits, Minnesota law does *not* count "conduct in the course of loading and unloading the vehicle" as "maintenance or use of a motor vehicle *unless* the conduct occurs while occupying, entering into or alighting from it." Minn. Stat. § 65B.43, subd. 3 (emphasis added). Because Decker was not occupying, entering into, or alighting from the truck, his injury did not arise out of the "maintenance or use" of the truck. Therefore Minnesota law does not require Great West to cover Selle's liability.

We recognize the No-Fault Act is supposed to help "relieve the severe economic distress of uncompensated victims." Minn. Stat. § 65B.42(1). But such a broad statutory purpose does not authorize us to re-write Minnesota law. *See Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Tr.*, 659 N.W.2d 755, 762 (Minn. 2003) (recognizing that, despite the No-Fault Act's purpose, the Act's plain language will result in uncompensated victims).

### III. Conclusion

Minnesota law does not invalidate Great West's coverage exclusion. We therefore affirm the district court's summary judgment order.[2]

———————————————————

[2]Decker separately moved for this court to certify questions to the Minnesota Supreme Court. But he did not ask the district court to do so. "The practice of requesting certification after an adverse judgment has been entered should be discouraged. . . . Once a question is submitted for decision in the district court, the parties should be bound by the outcome unless other grounds for reversal are present." *Perkins v. Clark Equip. Co.*, 823 F.2d 207, 210 (8th Cir. 1987). Exercising our discretion, we deny Decker's motion. *See id.* at 209 (explaining that using a state's certification procedure is discretionary).